**JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| ERIKA MEJIA MARINELARENA,<br><br>    Plaintiff,<br><br>vs.<br><br>ALLSTATE NORTHBROOK<br>INDEMNITY COMPANY,<br><br>    Defendant. | Case No. SA CV 20-2230-DOC-JDE<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [39] AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [40] |

Before the Court are Defendant Allstate Northbrook Indemnity Company's ("Allstate" or "Defendant") Motion for Summary Judgment ("Defendant Mot.") (Dkt. 39) and Plaintiff Erika Mejia Marinelarena's ("Marinelarena" or "Plaintiff") Motion for Partial Summary Judgment ("Plaintiff Mot.") (Dkt. 40). The Court heard oral arguments on January 12, 2022. For the reasons described below, the Court GRANTS Defendant's Motion and DENIES Plaintiff's Motion.

## I. BACKGROUND

### A. Facts[1]

On March 23, 2016, Plaintiff was involved in a multi-vehicle collision while stopped at a red light in Anaheim, California. Plaintiff Statement of Uncontroverted Facts ("Plaintiff SUF") (Dkt. 40-1) ¶¶ 3, 5. The collision was not Plaintiff's fault, and the driver who caused the crash fled the scene. *Id.* ¶¶ 3, 6. Plaintiff was transported to the emergency room at Anaheim Global Medical Center for treatment of her injuries. *Id.* ¶ 7.

Before the crash, Plaintiff had purchased an insurance policy from Defendant, which included uninsured/underinsured motorist coverage up to a total of $100,000 per person. *Id.* ¶¶ 1-2. That provision of the policy provided in relevant part:

> We will pay those damages that an insured person is legally entitled to recover from the owner or operator of an uninsured auto because of:
> 1. bodily injury sustained by an insured person, and property damage. . . .
> The bodily injury or property damage must be caused by accident and arise out of the ownership, maintenance or use of an uninsured auto. . . .
> The right to benefits and the amount payable will be decided by agreement between the insured person and Allstate. If an agreement can't be reached, the decision will be made by arbitration.

*Id.* ¶ 8.

After the crash, Plaintiff filed a claim with Defendant, which Defendant acknowledged in writing on March 26, 2016. *Id.* ¶ 13. On March 29, 2016, Defendant ordered a copy of the police report on the crash from the Anaheim Police department. *Id.* ¶ 14.

---

[1] Unless indicated otherwise, to the extent any of these facts are disputed, the Court concludes they are not material to the disposition of the Motion. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on the disputed evidence.

The California Insurance Code requires that an insured provides a statement under oath to the insurer within thirty days of an accident advising that the insured has a cause of action against an unknown person and setting forth facts supporting that assertion. Cal. Ins. Code § 11580.2(b)(2). Plaintiff did not file such a statement within thirty days. Defendant's Opposition to Statement of Uncontroverted Material Facts ("Defendant Opp'n SUF") (Dkt. 47-1) ¶ 48.

On April 19, 2016, Plaintiff's attorney Beau Nokes wrote to Defendant stating in part that his office was "retained to represent the interests of Erika Mejia Marinelarena concerning her bodily injury claim arising from the above referenced loss." Defendant Statement of Uncontroverted Material Facts ("Defendant SUF") (Dkt. 39-2) ¶ 5. Defendant's adjuster replied to the letter and stated, "please let me know if I may be of assistance to you in this matter." *Id.* ¶ 6. Plaintiff's attorney did not respond to the letter.

On May 18, 2016, Defendant's records show that its claim adjuster closed coverage on several categories of insurance coverage (all of those listed in the file) and closed Plaintiff's file. Plaintiff SUF ¶ 18. A note in Defendant's records on December 15, 2016 also says "file closed." *Id.* ¶ 20.

On December 5, 2017, twenty months after his last communication, Plaintiff's attorney sent Defendant a demand for arbitration under the policy. *Id.* ¶ 24. The cover letter for the demand stated, "I am sending this demand only to protect the statute of limitations. No formal response will be required until after I have submitted a demand package. [Plaintiff's] treatment is ongoing." Defendant SUF ¶ 7. One month later, on January 8, 2018, Defendant's adjuster notes record that this is a possible uninsured motorist bodily injury claim. Plaintiff SUF ¶ 25. Defendant opened an uninsured motorist bodily injury claim for Plaintiff, which it disclosed to Plaintiff in a letter on January 14, 2018. *Id.* ¶ 16. On January 16, 2018, Plaintiff's attorney made a policy limit demand on Plaintiff's behalf. Defendant SUF ¶ 10.

The parties do not dispute that Plaintiff suffered "bodily injury" within the meaning of the policy. Plaintiff SUF ¶ 9. However, the parties disagree on the severity of those injuries. Plaintiff's treating physicians at Kaiser Permanent recommended neck surgery to treat her

injuries, which they estimated would cost $100,000. Plaintiff's attorney did not send any medical records or bills to Defendant until January 12, 2018. Defendant Opp'n SUF ¶ 53. On February 14, 2018, Defendant's adjuster sent an internal email with instructions to file Plaintiff's medical records and bills, but not to do anything with Plaintiff's X-rays. Plaintiff SUF ¶ 29. The email noted that once the records were scanned Defendant would send Plaintiff to an independent medical expert ("IME"). *Id.* The IME, Dr. Kaloostian, opined that the accident had exacerbated Plaintiff's pre-existing neck and low back conditions, and that surgery was not necessary. Defendant SUF ¶ 17.

Defendant's adjuster then reduced Plaintiff's medical bills from $19,309.28 to $9,384.44 in Defendant's system. Plaintiff SUF ¶ 33. After entering this information into Defendant's program, the adjuster calculated the gross settlement amount of Plaintiff's claim at $19,985. *Id.* ¶ 35. On April 9, 2018, the adjuster offered Plaintiff $8,130 to settle her claim. *Id.* ¶ 38. Plaintiff did not accept this offer and sought arbitration. Defendant SUF ¶ 26. On November 8, 2018, Plaintiff served Defendant with a Section 998 offer for the policy limit of $100,000. *Id.* ¶ 32. Defendant countered with an offer of $19,985, which Plaintiff did not accept. *Id.* ¶¶ 33-34.

On November 28, 2018, the parties arbitrated their dispute over the value of Plaintiff's claim with Judge Thierry Colaw (Ret.), who awarded Plaintiff $100,000. *Id.* ¶ 31. Defendant paid that amount, plus Plaintiff's arbitration costs, by December 2018. Defendant SUF ¶ 37.

**B. Procedural History**

On November 24, 2020, Plaintiff filed a Complaint in this Court. *See* Complaint (Dkt. 1). On December 6, 2021, Defendant filed its Motion for Summary Judgment (Dkt. 39). Plaintiff opposed ("Plaintiff Opp'n") on December 13 (Dkt. 45), and Defendant replied ("Defendant Reply") on December 20 (Dkt. 46). Also on December 6, Plaintiff filed her Motion for Partial Summary Judgment (Dkt. 40). Defendant opposed ("Defendant Opp'n") on December 13 (Dkt. 44), and Plaintiff replied ("Plaintiff Reply") on December 20 (Dkt. 47). The Court heard oral arguments on January 12, 2022.

## II. LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible, evidence identifying the basis for the dispute. *See id.* The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

### III. DISCUSSION

#### A. Statute of limitations

Plaintiff's sole claim is for breach of the implied covenant of good faith and fair dealing. Defendant argues that this claim is barred by the statute of limitations. Defendant Mot. at 20.

The statute of limitations in California for a tort claim for breach of the implied covenant of good faith and fair dealing is two years when an insured sues an insurer for extra-contractual damages. *Archdale v. Am. Int'l Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 467 n.19 (2007); Cal. Civ. Proc. Code § 339. A cause of action accrues for statute of limitations purposes when "events have developed to a point where plaintiff is entitled to a legal remedy, not merely a symbolic judgment such as an award of nominal damages." *Davies v. Krasna*, 14 Cal. 3d 502, 513 (1975). To establish breach of the implied covenant in an insurance context, "(1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990). A cause of action accrues regardless of whether arbitration of the uninsured motorist claim has occurred. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 378 (9th Cir. 1997).

Defendant argues that to the extent Plaintiff's bad faith claim is based on Defendant rejecting her demand of the entire policy limit and forcing arbitration, the claim accrued on April 9, 2018, when Defendant rejected the policy limit offer. Defendant Mot. at 21-22. Plaintiff responds that her attorney did not reject the counter-offer at that point, and instead sought the opinion of Plaintiff's doctor as to Defendant's expert's medical analysis. Plaintiff Opp'n at 16. That supplemental report was not received until October 10, 2018. *Id.* at 17. Defendant notes that Plaintiff's attorney testified that after reviewing the doctor's initial recommendations in 2017, he concluded that any offer under the policy limit was unreasonable, and that he thought Defendant's doctor was unreasonable in his March 2018 exam; as such, any claim that Plaintiff did not know the offer was unreasonable until October 2018 contradicts that earlier testimony. Defendant reply at 5-6. Moreover, Plaintiff's Complaint lists 24 instances or categories of allegedly bad faith acts, the majority of which occurred before the April 2018

rejection of Defendant's offer. *See* Complaint ¶ 33. Any one or number of those were sufficient to start the clock on the statute of limitations.

Plaintiff also argues in the alternative that the statute of limitations never began accruing, since "[a]t no point did [Defendant] ever deny coverage nor refused [sic] to make payments." *Id.* Plaintiff further argues that since Defendant did not admit to violating the Unfair Practice Act with its first settlement offer in response to Plaintiff's Request for Admission, that settlement offer cannot have led to the statute of limitations accruing. *Id.* at 17-18. Plaintiff further argues that "it is not entirely certain when exactly the statute of limitations began to accrue," since there were several acts of alleged bad faith and a cause of action cannot be based on a single act. *Id.* at 19. Plaintiff's novel argument that a defendant's denial of liability effectively waives the statute of limitations is unsupported by caselaw and would render the statute of limitations toothless in almost all litigation.

Since the Court does not agree with Plaintiff that the claim has never accrued or accrued only in October 2018, it will calculate timing from April 9, 2018, at which point the claim had certainly accrued based on multiple allegedly bad faith acts.

Plaintiff next argues that the claim was tolled based on the COVID-19 pandemic. Plaintiff Opp'n at 14. On March 7, 2020, the Judicial Council of California adopted Emergency Rule 9, which stated that "the statutes of limitations . . . for civil causes of action that exceed 180 days are tolled from April 6, 2020, until October 2, 2020." *Id.* at 15. Adding two years plus the tolling time to April 9, 2018 would make the deadline for Plaintiff to file suit October 5, 2020. This suit was filed on November 24, 2020, well after the statute of limitations period had ended. Accordingly, the Court GRANTS Defendant's Motion and DISMISSES Plaintiff's claims.

**B.  Lack of compliance with California Insurance Code**

Although Plaintiff's claim is time-barred, it also fails due to her lack of compliance with California Insurance Code § 11580.2(b)(2). *See* Defendant Mot. at 17. Plaintiff does not dispute that she did not file the required sworn statement with Defendant within thirty days of the accident – indeed, Plaintiff does not dispute that she has never filed such a statement. And

Plaintiff does not cite any facts or law in opposition to Defendant's Motion to justify not filing the statement. *See generally* Plaintiff Opp'n at 13.

California courts have consistently held that the requirements of Section 11580.2 are mandatory, albeit in the context of other subsections. *See Blankenship v. Allstate Ins. Co.*, 186 Cal. App. 4th 87, 94 (2010) ("The statute imposes an absolute obligation on the insured to comply with its mandates or else the insured forfeits his claim.") (subd. i); *Juarez v. 21st Century Ins. Co.*, 105 Cal. App. 4th 371, 377 (2003) ("the statutory language clearly shows that the Legislature intended to impose strict prerequisites and time limits for claims involving uninsured motorists") (subd. k); *Sahakyan v. Explorer Ins. Co.*, No. 19-GDCV-00847, 2020 WL 5627020, at *2 (Cal. Super. Ct. July 24, 2020) (police report requirement of subd. b(2)). At argument, Plaintiff did not provide any reason to distinguish these other subsections from the provision of subdivision b(2) that Plaintiff did not follow.

The Court finds those cases' reasoning persuasive and holds that the requirements of subdivision (b)(2) are similarly mandatory. Since Plaintiff therefore had no entitlement to benefits, Defendant could not have acted in bad faith by delaying those benefits. *See Myers v. Allstate Indem. Co.*, 109 F. Supp. 3d 1331, 1337 (C.D. Cal. 2015) ("It is axiomatic that 'a bad faith claim cannot be maintained unless policy benefits are due.'" (quoting *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1153 (1990))).

## IV. DISPOSITION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiff's Motion for Partial Summary Judgment.

DATED: January 12, 2022

*/s/ David O. Carter*

DAVID O. CARTER

UNITED STATES DISTRICT JUDGE